UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FELIPA RODRIGUEZ, | Case No. CV 05-8626 JC |
| Plaintiff, | |
| | MEMORANDUM OPINION |
| v. | |
| MICHAEL J. ASTRUE,[1] Commissioner of Social Security, | |
| Defendant. | |

## I.   SUMMARY

On December 16, 2005, plaintiff Felipa Rodriguez ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits. The parties have filed a consent to proceed before a United States Magistrate Judge.

This matter is before the Court on the parties' Joint Stipulation ("Joint Stipulation" or "JS"). The Court has taken the matter under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; December 20, 2005 Case Management Order, ¶ XI.

---

[1] Michael J. Astrue is substituted as Commissioner of Social Security pursuant to Fed. R. Civ. P. 25(d)(1).

1    After consideration of the record as a whole and the applicable law, the
2  decision of the Commissioner is AFFIRMED because the findings of the
3  Administrative Law Judge ("ALJ") are supported by substantial evidence and are
4  free from material error.[2]

## II.    BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On October 22, 1999, plaintiff filed an application for Supplemental Security Income ("SSI") benefits. (Administrative Record ("AR") 19, 68-70, 161). Plaintiff asserted that she became disabled beginning on January 5, 1999 due to dislocated vertebrae. (AR 20, 68, 90, 162). An ALJ examined the medical record and heard testimony from plaintiff (who was not represented by counsel but was assisted by a Spanish language interpreter) and a vocational expert. (AR 19, 28-48). On April 26, 2001, the ALJ found that plaintiff was not disabled at any time through the date of the ALJ's decision. (AR 19-26). The Appeals Council denied review on January 16, 2003. (AR 4-5). Subsequently, plaintiff filed a civil action in the United States District Court, Central District of California. The court remanded the case for further proceedings.[3] (AR 176-86).

On remand, another ALJ examined the medical record and heard testimony from plaintiff (who was assisted by counsel and a Spanish language interpreter) and a vocational expert on August 11, 2005. (AR 161-62, 455-97). On October 4, 2005, the ALJ found: (1) plaintiff suffered from the following severe

///
///

---

[2] The harmless error rule applies to the review of administrative decisions regarding disability. See Batson v. Commissioner, 359 F.3d 1190, 1196 (9th Cir. 2004) (applying harmless error standard); see also Stout v. Commissioner, 454 F.3d 1050, 1054-56 (9th Cir. 2006) (discussing contours of application of harmless error standard in social security cases).

[3] The court found that plaintiff did not validly waive her right to counsel, and that the ALJ failed to develop the record fully and fairly. (AR 177-86).

2

impairments: low back strain and arthralgias (or arthritis)[4] (AR 170, 172); (2) plaintiff did not have any other medically determinable physical or mental impairments (AR 172); (3) plaintiff's medically determinable impairments, considered singly or in combination, did not meet or medically equal one of the listed impairments (AR 170, 172); (4) plaintiff retained the residual functional capacity to perform the full range of medium work[5] (AR 170, 172); (5) plaintiff could perform her past relevant work as a chicken eviscerator (AR 162, 171-72); and (6) plaintiff's allegations regarding her limitations were not fully credible (AR 169, 172).[6]

The record does not reflect that plaintiff sought review of the October 4, 2005 decision by the Appeals Council.

## III. APPLICABLE LEGAL STANDARDS

### A. Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any

///

---

[4] The ALJ appears to have used the terms arthralgias and arthritis interchangeably. (AR 170, 172). Arthralgia is pain in a joint, whereas arthritis is inflammation of a joint. Dorland's Illustrated Medical Dictionary at 149 (30th ed. 2003).

[5] Specifically, the ALJ determined that plaintiff: (i) could lift and carry up to 50 pounds occasionally and 25 pounds frequently; (ii) could stand, walk, and sit for about 6 hours in an 8-hour workday; and (iii) had no other limitations. (AR 170, 172).

[6] The ALJ incorporated by reference the summary of the medical and non-medical evidence contained in the prior ALJ's April 26, 2001 decision, except to the extent specifically modified or supplemented in his own decision. (AR 162).

3

other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

(2) Is the claimant's alleged impairment sufficiently severe to limit her ability to work? If not, the claimant is not disabled. If so, proceed to step three.

(3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.

(4) Does the claimant possess the residual functional capacity to perform her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

(5) Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); see also Burch, 400 F.3d at 679 (claimant carries initial burden of proving disability). If, at step four, the claimant meets her burden of establishing an inability to perform past work, the

Commissioner must show, at step five, that the claimant can perform some other work that exists in "significant numbers" in the national economy (whether in the region where such individual lives or in several regions of the country), taking into account the claimant's residual functional capacity, age, education, and work experience. Tackett, 180 F.3d at 1100 (citing 20 C.F.R § 404.1560(b)(3)); 42 U.S.C. § 423(d)(2)(A). The Commissioner may satisfy this burden, depending upon the circumstances, by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Tackett).

ALJs routinely rely on the Dictionary of Occupational Titles ("DOT") "in determining the skill level of a claimant's past work, and in evaluating whether the claimant is able to perform other work in the national economy." Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990) (citations omitted); see also 20 C.F.R. § 416.966(d)(1) (DOT is source of reliable job information). The DOT is the presumptive authority on job classifications. Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995). An ALJ may not rely on a vocational expert's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the DOT, and if so, the reasons therefor. Massachi v. Astrue, 486 F.3d 1149, 1152-53 (9th Cir. 2007) (citing Social Security Ruling 00-4p).[7]

### B. Standard of Review

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Parra v. Astrue, 481 F.3d 742,

---

[7] Social Security rulings are binding on the Administration. See Terry, 903 F.2d at 1275 n.1 (9th Cir. 1990). Such rulings reflect the official interpretation of the Social Security Administration and are entitled to some deference as long as they are consistent with the Social Security Act and regulations. Massachi, 486 F.3d at 1152 n.6.

746 (9th Cir. 2007); Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted). It is more than a mere scintilla but less than a preponderance. Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ. Parra, 481 F.3d at 746; Robbins, 466 F.3d at 882.

## IV.   DISCUSSION

### A.   The ALJ Properly Evaluated Plaintiff's Credibility

Plaintiff contends that the ALJ failed properly to evaluate her credibility regarding her subjective symptoms, and to consider her testimony. (JS 19-25, 28-29). This Court disagrees and finds that the ALJ properly considered plaintiff's subjective complaints and testimony.

#### 1.   Pertinent Law

An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment. Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007) (citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)). If the record establishes the existence of a medically determinable impairment that could reasonably give rise to symptoms assertedly suffered by a claimant, an ALJ must make a finding as to the credibility of the claimant's statements about the symptoms and their functional effect. Robbins, 466 F.3d 880 at 883 (citations omitted). Unless an

ALJ makes a finding of malingering based on affirmative evidence thereof, the ALJ may reject a claimant's testimony regarding the severity of her symptoms only if the ALJ makes specific findings stating clear and convincing reasons for doing so. Id. (citations omitted). The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004).

To find the claimant not credible, an ALJ must rely either on reasons unrelated to the subjective testimony (e.g., reputation for dishonesty), internal contradictions in the testimony, or conflicts between the claimant's testimony and the claimant's conduct (e.g., daily activities, work record, unexplained or inadequately explained failure to seek treatment or to follow prescribed course of treatment). Orn, 495 F.3d at 636; Robbins, 466 F.3d at 883; Burch, 400 F.3d at 680-81; SSR 96-7p. Although an ALJ may not disregard such claimant's testimony solely because it is not substantiated affirmatively by objective medical evidence, the lack of medical evidence is a factor that the ALJ can consider in his credibility assessment. Burch, 400 F.3d at 681.

Questions of credibility and resolutions of conflicts in the testimony are functions solely of the Commissioner. Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006). If the ALJ's interpretation of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

**2.    Analysis**

The ALJ in this case determined that the medical records did not show that plaintiff had any type of an impairment that could cause the considerable limitations that plaintiff claimed existed.[8] (AR 169). Even though this arguably means that the ALJ had no obligation to make findings regarding his assessment

---

[8] Plaintiff has the burden of proof to establish the existence of a medically determinable impairment. 20 C.F.R. § 416.912.

of plaintiff's subjective complaints, the ALJ here nonetheless made specific findings setting forth clear and convincing reasons why he discounted plaintiff's allegations.

First, the ALJ noted that no objective medical evidence supported plaintiff's testimony that she was limited to lifting 10 pounds, standing for 10 minutes, walking about 10 meters, and sitting for 10 minutes. (AR 169, 473-74, 476). Specifically, the ALJ pointed to the fact that no physician found that plaintiff experienced the degree of limitations alleged, and that the medical record did not reflect that plaintiff had any type of impairment, such as severe spinal stenosis or severe obstructive lung disease, that could cause such considerable limitations. (AR 169). Although, as indicated above, an ALJ may not disregard a plaintiff's testimony solely because it is not substantiated affirmatively by objective medical evidence, the lack of medical evidence is a factor that the ALJ can consider in his credibility assessment. The ALJ properly considered such factor here.

Second, the ALJ indicated that plaintiff's complaints were inconsistent with her conservative treatment record. (AR 169). Plaintiff testified that she was prevented from working as a result of pain in her lower back that radiated down both of her legs to the bottom of her feet, headaches every morning which lasted for about four to five hours, and neck pain. (AR 469-73). Plaintiff further testified that she could not move her shoulders sometimes, and that she suffers from cramps in her shoulders and her wrists, and tingling and numbing sensations in her fingers. (AR 470-71, 475). As noted by the ALJ, however, plaintiff never had surgery, was never hospitalized for any of her conditions, and generally took over-the-counter medications for her pain. (AR 107, 123, 133, 169). While the record reflects that plaintiff visited the emergency room on several occasions, the ALJ pointed out that the medical reports reflect that plaintiff rarely presented with acute problems, and that most of the visits were for follow-up. (AR 169). As noted above, a plaintiff's conservative course of medical care is a legitimate reason to discount a claimant's credibility. Meanel v. Apfel, 172 F.3d 1111, 1114

(9th Cir. 1999) (ALJ properly considered, as part of his credibility evaluation, the treating physician's failure to prescribe, and the claimant's failure to request, medical treatment commensurate with the "supposedly excruciating" pain alleged, and her "minimal, conservative treatment") (citing Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (en banc)) Fair, 885 F. 2d at 604 (ALJ permissibly considered discrepancies between claimant's allegations of "persistent and increasingly severe pain" and nature and extent of treatment obtained).

Third, the ALJ relied upon the apparent conflict between plaintiff's allegations of pain and her unexplained failure to follow her physicians' prescribed course of treatment. Specifically, the ALJ noted that although plaintiff was referred for physical therapy to treat her back pain, the record does not reflect that she was diligent in attending such therapy, and in fact, reflects that she was discharged for failure to attend. (AR 169, 214-15, 217). The ALJ reasonably could infer that, if plaintiff's condition was as incapacitating as claimed, she would be more diligent about following prescribed treatment.

Fourth, the ALJ determined that plaintiff's testimony regarding her daily activities was inconsistent with the description of daily activities that plaintiff reported to a physician. Specifically, although plaintiff testified at the hearing that she could only perform minimal activities (e.g., that she needed help to cook), she told Dr. Lynn Hung in an orthopedic examination that she was able to dress herself, feed herself, brush her hair, and cook. (AR 133, 169, 485-86). Inconsistent statements are an appropriate basis upon which to reject a plaintiff's subjective complaints.[9]

///

///

---

[9]The ALJ pointed to plaintiff's inconsistent statements regarding her daily activities rather than to any inconsistency between her alleged functional capacity and her performance of daily activities. Consequently, this does not present a case in which the court must address whether the daily activities that plaintiff could perform constitute transferable work skills.

Finally, the ALJ relied upon the inconsistency between plaintiff's complaints and her past work. The ALJ noted that plaintiff did not stop working purely based on her medical impairments, but rather, because plaintiff was laid off. (AR 169, 480). Copeland v. Bowen, 861 F.2d 536, 542 (9th Cir. 1988) (ALJ properly discredited claimant's pain testimony because plaintiff had been laid off, albeit for medical reasons); see also Bruton v. Massanari, 268 F.3d 824, 828 (9th Cir.), as amended (2001) (ALJ did not err in discrediting claimant's subjective complaints where claimant "stated at the administrative hearing and to at least one of his doctors that he left his job because he was laid off, rather than because he was injured").

Plaintiff contends that the ALJ erred by failing properly to evaluate plaintiff's testimony in accordance with Social Security Ruling 96-7p. (JS 24, 28). Plaintiff asserts that "the ALJ did not even mention, no less apply Social Security Ruling 96-7p as required." (JS 25). Contrary to plaintiff's assertion, the ALJ specifically stated, "[i]n accordance with 20 C.F.R. § 416.929 and Social Security Ruling 96-7p, I have carefully considered the following: the nature, location, onset, duration, frequency, radiation, and intensity of the claimant's pain and other symptoms; precipitating and aggravating factors; the type dosage, effectiveness, and adverse effects if the claimant's medication; treatment, beside medication, and other measures; functional limitations; and daily activities." (AR 168). As discussed above, the ALJ's discussion of plaintiff's credibility reflects consideration of these factors.

In sum, the ALJ's reasons for finding plaintiff's subjective complaints not credible were supported by substantial evidence and were sufficiently specific to permit the Court to conclude that the ALJ did not arbitrarily discredit plaintiff's subjective testimony.[10] Accordingly, based on the clear, convincing, and specific

---

[10] Although this Court has expressly addressed only some of the reasons cited by the ALJ to reject plaintiff's credibility, the remaining reasons also withstand scrutiny.

10

reasons articulated by the ALJ for discounting plaintiff's credibility, the Court concludes that the ALJ properly assessed her credibility.

> **B.    The ALJ's Residual Functional Capacity Assessment Is Supported by Substantial Evidence and Is Free from Material Error**

Plaintiff disputes the ALJ's residual functional capacity determination based upon her contention that the record does not support a finding that plaintiff can perform medium work on a "sustained" basis due to her pain and limitations. (JS 3-10, 12-13).

The Court finds that the ALJ's decision that plaintiff had the residual functional capacity to perform medium work activity implicitly includes an assessment that she could perform such work on a sustained basis.[11] The Court further finds that the ALJ's residual functional capacity assessment is supported by substantial evidence and is free from material error. See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) ("We will affirm the ALJ's determination of [claimant's] RFC if the ALJ applied the proper legal standard and his decision is supported by substantial evidence.").

The ALJ comprehensively summarized the medical evidence in the record, including evidence from plaintiff's treating physicians.[12] (AR 164-68, 170-71). He relied, inter alia, on the opinions of three non-treating physicians who rendered

---

[11]Residual functional capacity is "what [one] can still do despite [ones] limitations" and represents an "assessment based upon all of the relevant evidence." 20 C.F.R. § 416.945(a). Security Ruling 96-8p, to which the ALJ specifically referred (AR 170), advises that residual functional capacity "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p.

[12]Although plaintiff selectively recites medical evidence from her treating physicians, she does not assert that the ALJ rejected, or improperly rejected the opinions of treating physicians, or impermissibly adopted the opinions of other medical professionals. Instead, she more generally asserts that the record as a whole does not support the ALJ's residual functional capacity determination or a finding that she could perform the duties of a chicken cutter on a sustained basis. (JS 4-9).

11

their opinions regarding plaintiff's limitations – Drs. Biscaro, Hung, and Montegrade. See Thomas, 278 F.3d at 957 (opinions of non-treating or non-examining physicians may serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (ALJ appropriately relied upon opinion of examining physician, who grounded his opinion as to claimant's physical impairments on objective findings). Dr. Carlo Biscaro performed a worker's compensation evaluation of plaintiff on December 31, 1998. (AR 121-29). Based on his independent clinical findings, Dr. Biscaro diagnosed plaintiff with cervical sprain, lumbosacral sprain, rotator cuff tendinitis, minimally symptomatic, normal examination of the thoracic spine, and sprain of the medial structures of the right knee, minimally symptomatic. (AR 127). Dr. Biscaro found that although plaintiff had glove anesthesia of the right hand and slightly position impingement sign in her right shoulder, she had full range of motion of the neck, back, hips, knees, and ankles. (AR 124-26). Dr. Biscaro opined that plaintiff had no significant work-related restrictions, and could perform her usual and customary work. (AR 127, 129).

On December 7, 1999, Dr. Lynn Hung performed a consultative orthopedic evaluation of plaintiff and found that plaintiff had full range of motion of the cervical spine, normal motion of the shoulders, elbows, wrists, hips, knees, and ankles, and some limitation in the motion of her lumbar spine. (AR 134-35). An X-ray of the lumbosacral spine was normal. (AR 136). Dr. Hung diagnosed plaintiff with chronic lumbosacral pain with lumbosacral strain/sprain] and opined that plaintiff had no impairment-related physical limitations. (AR 137).

On April 5, 2005, Dr. Faye Montegrade performed a consultative examination on plaintiff and found that plaintiff had full range of motion of the shoulders, elbows, hips, knees, and ankles, and no sensory deficits. (AR 196). As the ALJ notes, Dr. Montegrade indicated that while plaintiff ambulated with a cane, she did not require it, and in fact, she left her cane in the office and

eventually came back for it. (AR 168, 196). Dr. Montegrade assessed plaintiff with chronic pain syndrome involving the back, wrists, ankles, left knee, and neck. (AR 196). She opined that plaintiff had no restrictions in pushing, pulling, lifting, carrying, sitting, standing, walking, hearing or seeing. (AR 196). Dr. Montegrade further opined that plaintiff had no postural restrictions and no restrictions in the use of the upper extremities for gross manipulation. (AR 196). In addition, in an attached Medical Source Statement, Dr. Montegrade indicated that plaintiff had no exertional or nonexertional limitations. (AR 198-201).[13]

The ALJ further individually addressed each of plaintiff's asserted impairments (lower back strain, arthralgias, asthma, hypertension, decreased vision, and depression) and found that plaintiff's lower back condition and various arthralgias reduced plaintiff's residual functional capacity to medium level. (AR 171). Specifically, with respect to plaintiff's lower back, the ALJ, citing plaintiff's treating physician records, noted that a lumbosacral spine X-rays on May 2, 2001 indicated modest degenerative changes and that an MRI on August 31, 2001 showed mild facet joint arthropathy. (AR 170, 405-06, 414). The ALJ further noted, citing plaintiff's treating physician records, that while plaintiff reported back pain during several doctor's visits, very few reports reflected that

---

[13]The ALJ also noted and considered the workers' compensation evaluation of non-treating physician, Dr. Maryam R. Beigi dated December 18, 1998. Dr. Beigi found that plaintiff's gait was normal and that she had full range of motion of her cervical spine, lumbar spine, right shoulder, and left knee. Dr. Beigi advised that plaintiff avoid frequent bending, heavy lifting, and repetitive movements of the right upper extremity. (AR 118). Plaintiff has not argued that the ALJ erroneously rejected or reached conclusions contrary to the December 18, 1998 opinion of Dr. Beigi. Indeed, as discussed infra, the ALJ properly found that plaintiff is capable of performing her past relevant work as a chicken eviscerator, which is classified as light work. Thus, Dr. Beigi's opinion is consistent with the ALJ's decision. See Macri v. Chater, 93 F.3d 540, 544 (9th Cir. 1996) (ALJ reasonably inferred that worker who had lost approximately half of his pre-injury capacity for lifting, bending and stooping under California workers' compensation guidelines, and whose prior job required lifting forty pounds occasionally, twenty-five pounds frequently, and constant bending, could perform light work); Carpenter v. Apfel, 2000 WL 973681 at *3-*4 (N.D. Cal. 2000) (opinion of examining physician that claimant had "lost some capacity for lifting and bending, and was precluded from any heavy lifting" under California workers' compensation guidelines supported ALJ's finding that claimant could perform light work).

13

she had decreased range of motion of the lumbar spine and that the only positive exam finding regarding her back was muscle tenderness. (AR 125, 170).

With respect to plaintiff's arthralgias in her neck shoulders, wrists, and left knee, the ALJ noted that X-rays of plaintiff's cervical spine on May 15, 2003 were normal (AR 399) and that there was no radiographic evidence of arthritis in her peripheral joints. (AR 171). The ALJ further noted that plaintiff generally had full range of motion of her neck and extremities on examination. (AR 171).

Finally, the ALJ considered plaintiff's testimony in his residual functional capacity determination. See Robbins, 466 F.3d at 883 (ALJ must consider all relevant evidence in the record, including allegations of pain). As discussed above, the ALJ's finding that plaintiff's testimony regarding her subjective complaints was not credible is supported by substantial evidence.

Although the ALJ did not make an express finding that plaintiff could "sustain" medium work activity, such a finding is implicit in his decision. The ALJ cited the regulation describing residual functional capacity, 20 C.F.R. § 416.945, and Social Security Ruling 96-8p, both of which make clear that residual functional capacity is a measure of plaintiff's capacity to perform work on a regular and continued basis. Thus, this Court concludes that the ALJ properly assessed whether plaintiff was capable of working on a regular and continuing basis and of performing sustained work activity in light of her lower back condition and arthralgias, and accommodated these restrictions in determining plaintiff's residual functional capacity.[14]  Accordingly, the ALJ's residual functional capacity assessment is supported by substantial evidence in the record and is free from legal error.[15]

---

[14] As the Court finds that the ALJ properly determined plaintiff's residual functional capacity, the Court need not and does not address plaintiff's arguments regarding the Grids. (JS 9-10).

[15] To the extent plaintiff alleges that the ALJ erred in his residual functional capacity determination because he did not perform a function-by-function analysis pursuant to Social

(continued...)

**C.    The ALJ Did Not Reversibly Err in Finding that Plaintiff Could Perform Her Past Relevant Work**

Plaintiff contends that the ALJ improperly determined that she could perform her past relevant work as a chicken eviscerator. (JS 13-16, 18-19). This Court finds that the ALJ did not reversibly err in finding that plaintiff could perform her past relevant work.

**1.    Pertinent Law**

The Administration may deny benefits when the claimant can perform the claimant's past relevant work as "actually performed," or as "generally" performed. Pinto, 249 F.3d at 845. Although the claimant has the burden of proving an inability to perform her past relevant work, "the ALJ still has a duty to make the requisite factual findings to support his conclusion." Id. at 844. "To determine whether a claimant has the residual capacity to perform [her] past relevant work, the [Administration] must ascertain the demands of the claimant's former work and then compare the demands with [her] present capacity." Villa v. Heckler, 797 F.2d 794, 797-98 (9th Cir. 1986). In finding that an individual has the capacity to perform a past relevant job, the determination or decision must contain the following specific findings of fact: (1) a finding of fact as to the individual's residual functional capacity; (2) a finding of fact as to the physical and mental demands of the past job/occupation; and (3) a finding of fact that the individual's residual functional capacity would permit a return to her past job or occupation. SSR 82-62; See Dealmeida v. Bowen, 699 F. Supp. 806, 807 (N.D. Cal. 1988).

///

---

[15](...continued)
Security Ruling 96-8p, the Court finds that the ALJ properly took into account those limitations for which there was record support that did not depend on plaintiff's subjective complaints. (JS 8, 19). Thus, preparation of a function-by-function analysis for medical conditions or impairments the ALJ found neither credible nor supported by the record was unnecessary. Bayliss, 427 F.3d at 1217.

A claimant is "not disabled" if she retains the residual functional capacity to perform the "actual functional demands and job duties of a particular past relevant job" or the "functional demands and job duties of the occupation as generally required by employers throughout the national economy." Social Security Ruling 82-61; see also Villa, 797 F.2d at 798 ("The claimant has the burden of proving an inability to return to his former type of work and not just to his former job."). Information from the DOT or the testimony of a vocational specialist, may be used to ascertain the demands of an occupation as ordinarily required by employers throughout the national economy. SSR 82-61; Villa, 797 F.2d at 798. Regardless of which source of job information is used, the ALJ is required to make "specific findings as to the claimant's residual functional capacity, the physical and mental demands of the past relevant work, and the relation of the residual functional capacity to the past work." Pinto, 249 F.3d at 845 (citing SSR 82-62).

### 2. Analysis

Here, the ALJ heard testimony from plaintiff regarding her past work as a chicken eviscerator. Plaintiff testified that her work was full-time (six days a week, eight hours per day), and described her duties as beheading and deboning chickens while standing at a table. (AR 466-67, 478). The ALJ also heard the vocational expert testify that the DOT classified plaintiff's past work as a chicken eviscerator or cutter as unskilled light work, and that plaintiff's performance of her past work was consistent with the DOT. (AR 491-92). The ALJ found that plaintiff retained the residual functional capacity to perform medium work with no nonexertional limitations, and that her past relevant work as a chicken eviscerator did not require the performance of work-related activities precluded by her residual functional capacity. (AR 172). The ALJ concluded that since plaintiff had the residual functional capacity to perform medium work, she was also capable of light work. (AR 172). See 20 C.F.R. § 416.967(c) ("If someone can do medium work, we determine that he or she can also do sedentary and light work"). The ALJ therefore determined that plaintiff could perform her past relevant work

as a chicken eviscerator as generally performed in the national economy. (AR 172). While the ALJ's decision does not discuss the specific duties of a chicken eviscerator, any such error was harmless in light of the fact that the ALJ properly relied on the DOT's description of the chicken eviscerator job. See Batson, 359 F.3d at 1196. Moreover, plaintiff fails to meet her burden to demonstrate that her work as a chicken eviscerator was not light work, required more than a light exertional level, or was otherwise inconsistent with plaintiff's residual functional capacity, as determined by the ALJ. See Villa, 797 F.2d at 798 (claimant has burden of overcoming presumption that DOT description for given job title applies). Accordingly, the ALJ's decision which contains the requisite findings as to plaintiff's residual functional capacity, the physical demands of plaintiff's past chicken eviscerator work, and plaintiff's ability to return to such work is supported by substantial evidence. See SSR 82-62.[16]

## V.   CONCLUSION

For all of the foregoing reasons, the decision of the Commissioner is AFFIRMED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: September 21, 2007

/s/
Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE

---

[16] Plaintiff asserts that the vocational expert opined that plaintiff could not return to her past relevant work based on plaintiff's hypothetical, and that such testimony constitutes substantial evidence in support of a finding that plaintiff is disabled. (JS 16, 28). The transcript of the August 11, 2005 proceeding reflects that the ALJ responded to plaintiff's hypothetical, not the vocational expert. (AR 494). However, even assuming that the transcript is incorrect, and that the vocational expert answered counsel's hypothetical question, plaintiff's argument would fail because her question contained limitations which the ALJ did not find to exist. As noted supra, the ALJ's assessment of plaintiff's residual functional capacity is supported by substantial evidence.